UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELLA MAE WHITE,                               Case No. 14-12870

             Plaintiff,                      Judith E. Levy
v.                                            United States District Judge

COMMISSIONER OF SOCIAL SECURITY,              Michael Hluchaniuk
                                              United States Magistrate Judge

             Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS MOTIONS FOR SUMMARY JUDGMENT (Dkt. 12, 13)**

**I.    PROCEDURAL HISTORY**

      A.    Proceedings in this Court

On July 23, 2014, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Judith E. Levy referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for supplemental security income. (Dkt. 2). This matter is before the Court on cross-motions for summary judgment. (Dkt. 12, 13).

      A.    Administrative Proceedings

Plaintiff filed the instant claim on May 10, 2011, alleging disability

beginning October 1, 2006. (Dkt. 9-2, Pg ID 59).[1] The claims were initially

disapproved by the Commissioner on November 4, 2011. *Id.* Plaintiff requested a

hearing and on December 3, 2012, plaintiff appeared with counsel before

Administrative Law Judge (ALJ), Gregory Holiday, who considered the case *de

novo*. (Dkt. 9-2, Pg ID 77-125). In a decision dated March 12, 2013, the ALJ

found that plaintiff was not disabled from the application date through the date of

decision. (Dkt. 9-2, Pg ID 56-73). Plaintiff requested a review of that decision,

and the ALJ's decision became the final decision of the Commissioner when, after

review of additional exhibits, the Appeals Council, on May 29, 2014, denied

plaintiff's request for review. (Dkt. 9-2, Pg ID 40-45); *Wilson v. Comm'r of Soc.

Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).[2]

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

---

[1] Notably, a prior application for SSI was filed by plaintiff on November 15, 2006,which was denied on September 8, 2009. (Dkt. 9-2, Pg ID 59). The ALJ noted at the hearing that he would have to find that, as of September 3, 2009 (the date of the prior decision), plaintiff was not disabled. (Dkt. 9-2, Pg ID 82).

[2] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was 36 years old on the application date.  (Dkt. 9-2, Pg ID 61).

Plaintiff's relevant work history included work as a home health aide.  (Dkt. 9-2,

Pg ID 61).  The ALJ applied the five-step disability analysis to plaintiff's claims

and found at step one that plaintiff had not engaged in substantial gainful activity

since the application date.  (Dkt. 9-2, Pg ID 62).  At step two, the ALJ found that

plaintiff's systemic lupus erythematosus (SLE), congestive heart failure,

hypertension , and pulmonary HTN were "severe" within the meaning of the

second sequential step.  *Id.*  At step three, the ALJ found that plaintiff's severe

impairments did not meet or equal a listed impairment.  *Id.*  The ALJ found that

plaintiff had the following residual functional capacity:

> After careful consideration of the entire record, I find
> that the claimant has the residual functional capacity to
> perform sedentary work as defined in 20 CFR 416.967
> (a) except the claimant cannot push or pull with the right
> upper extremity; cannot operate foot controls with the
> right lower extremity; cannot climb any ladders, ropes,
> or scaffolds; can only briefly (up to 10% of the workday)
> climb ramps or stairs; can only occasionally stoop,
> crouch, or kneel; can only briefly crawl; cannot perform
> overhead reaching and handling bilaterally; cannot
> constantly perform gross manipulation; and must avoid

> even moderate exposure to environmental irritants (such
> as dusts, gases, fumes, and odors) and to poorly
> ventilated areas.

(Dkt. 9-2, Pg ID 62-63).  At step four, the ALJ found that plaintiff was unable to perform her past relevant work.  (Dkt. 9-2, Pg ID 71).  At step five, the ALJ denied plaintiff benefits because she could perform a significant number of jobs available in the national economy.  (Dkt. 9-2, Pg ID 72-73).

B.   Plaintiff's Claims of Error

According to plaintiff, the ALJ erred when he failed to properly assess the plaintiff's mental RFC as required by agency regulations.  20 C.F.R. § 404.1503(e).   Plaintiff testified to both symptoms of depression as well as anxiety.  Specifically, she testified to having crying spells, fixation on pain, isolation and not wanting to leave her house, anxiety when out of her house as well as lack of motivation and lethargy.  Plaintiff contends that her testimony concerning her depression and anxiety warranted a consultative examination by a qualified psychologist or psychiatrist pursuant to 20 C.F.R. § 404.1503(e).   Thus, plaintiff also argues that the ALJ did not properly evaluate her mental impairment pursuant to SSR 96-8p and SSR 85-15.  A severe impairment, is one that causes more than a minimal effect on the claimant's ability to perform basic work activities.  *Higgs v. Bowen*, 880 F2d 860, 862 (6th Cir. 1988).  The *Higgs* court further held that "an impairment can be considered not severe only if it

is a slight abnormality that minimally affects work ability regardless of age, education, and experience." Under this standard, plaintiff says that it is clear that her mental impairment was mischaracterized by the ALJ and must be revisited.

Pursuant to *Farris v. Secretary of H.H.S.*, 773 F.2d 85, 89-90 (1985), remand is required where there has been an erroneous finding regarding the claimant's severe impairment. According to plaintiff, her ability to work has been severely over-estimated, resulting in an erroneous finding that she retains the ability to perform sedentary work. The ALJ ignored her numerous additional significant symptoms when determining that she could work as a surveillance system monitor, order checker, or visual inspector (for example from the VE's findings). Plaintiff says that the ALJ seems to have ignored the additional hypotheticals posed to the VE, which asked if plaintiff would be able to work if it was necessary for her to take breaks or miss three or more days of work per month due to illness. (Tr 79). The VE clearly stated that such a requirement would preclude the plaintiff from holding a job.

Plaintiff next argues that the ALJ violated agency regulations by failing to state a rationale or reference supporting evidence to back his RFC findings. Agency regulations, SSR 96-8p, require that an RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g.

daily activities, observations)." The ALJ is also required to include in his RFC assessment "a discussion of why reported symptom-related functional limitation/restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id*. As indicated above, nowhere in the ALJ's decision does he go through each work-related activity the plaintiff can perform and nor does he address the medical evidence that supports his conclusions outlined in the RFC. (Tr. 23). Plaintiff contends that the ALJ does not, as required by SSR 96-8p, include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and non-medical evidence and as such must be reversed.

Plaintiff also asserts that this case should be remanded because there is no support for the ALJ's RFC assessment, and the RFC's contained in the record do not comport with the ALJ's conclusion. In this matter, the ALJ discounted the Physical Residual Functional Capacity Assessment performed by the state agency medical consultant dated November 2, 2011. The state agency medical consultant found that plaintiff was capable of performing light exertional weight parameters and that she was capable of sitting, standing, and/or walking for approximately 6 hours in a normal 8 hour work day with no postural, manipulative, visual, communicative, or environmental limitations. (Tr. 587). In addition, the ALJ determined that "I find that the treatment notes do not substantiate Dr. Popoff's

6

conclusions, and thus assign greater weight to the treatment notes than to his opinion." (Tr. 26). The ALJ is referring to a checklist-type form, Dr. Popoff completed for the State of Michigan, Department Human Services. Specifically, Dr. Popoff completed a Physical Capacity Assessment and a Medical Needs Form for plaintiff's qualifications for state benefits through the State of Michigan, Department of Human Services. In rejecting the opinions of the state agency medical consultant as well as Dr. Popoff, plaintiff's treating physician, the only two medical providers who provided an RFC, plaintiff asserts that the ALJ has essentially made up an RFC. Pursuant to SSR 83-10 the ALJ's RFC is required to rely on the medical evidence presented, as residual functional capacity is a medical assessment. According to plaintiff, the ALJ is not qualified to make a medical assessment and must rely on the medical assessments of the treating and/or consultative examiner(s).

The RFC finding directly contradicts the testimony and evidence presented at the hearing. The plaintiff testified that she had flare-ups 10 days a month, where she would be fatigued and in pain to the point that she could not do any activity whatsoever. Further, she testified that she was winded walking from her apartment to the elevator. (Tr. 61). Several hypotheticals were posed to the VE, including one including all the above restrictions and instructed the VE to assume that the employee would require 3 health-related absences

per month. The VE, Pauline McEachin, replied that most employment allows

for only one such absence per month, thus eliminating any available jobs.

Despite this direct testimony, the ALJ found that plaintiff is not disabled and

can hold a (of only three given) sedentary job.  (Tr 14).  This is particularly

significant where the burden to prove that a claimant could perform other

work existing in the national economy falls upon the *Commissioner. Felisky*

*v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  This Court may reverse the ALJ's

findings if they are either contrary to controlling legal standards or unsupported by

substantial evidence in the record.  42 U.S.C. § 405 (g); *Lindsley v. Comm'r of Soc*

*Sec*, 560 F.3d 601, 604 (6th Cir. 2009).  Clearly, the ALJ's findings are not

supported by substantial evidence where the determination that plaintiff can work

is directly contradicted by both her own testimony and that of the VE.  Therefore,

it is respectfully requested that this matter be remanded for a proper evaluation of

her RFC.

      C.    <u>The Commissioner's Motion for Summary Judgment</u>

      Plaintiff alleges that the ALJ failed to assess her mental RFC according to

the Agency's regulations.  In evaluating plaintiff's impairments, the ALJ found at

step two, that her systemic lupus erythematosus, congestive heart failure,

hypertension, and pulmonary hypertension were severe impairments, but her

anemia and overweight/obesity were non-severe impairments.  (Tr. 23).  Thus, as

8

the Commissioner points out, the initial issue is whether the ALJ's step-two

finding is supported by substantial evidence.

Pursuant to the regulations, a severe impairment is a "medically

determinable" physical or mental impairment or a combination of impairments that

significantly limit(s) an individual's physical or mental ability to perform basic

work activities. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c). The regulations go on

to state that basic work activities include the following: 1) physical functions such

as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or

handling; 2) capacities for seeing, hearing, and speaking; 3) understanding,

carrying out, and remembering simple instructions; 4) use of judgment; 5)

responding appropriately to supervision, co-workers, and usual work situations;

and 6) dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b). In

establishing the presence of a severe, medically determinable impairment,

however, plaintiff bears the burden of providing medical evidence that

demonstrates the severity of her condition. *See Bowen v. Yuckert*, 482 U.S. 137,

146 (1987); Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3. Here,

though, the only evidence plaintiff presents to establish that her mental

impairment(s) was severe is her hearing testimony. In addition, as explained in

SSR 96-4p:

Although the regulations provide that the existence of a

9

> medically determinable physical or mental impairment
> must be established by medical evidence consisting of
> signs, symptoms, and laboratory findings, the regulations
> further provide that under no circumstances may the
> existence of an impairment be established on the basis of
> symptoms alone. Thus, regardless of how many
> symptoms an individual alleges, or how genuine the
> individual's complaints may appear to be, the existence
> of a medically determinable physical or mental
> impairment cannot be established in the absence of
> objective medical abnormalities; i.e., medical signs and
> laboratory findings.

1996 WL 374187, at *1. As such, the Commissioner maintains that plaintiff failed

to carry her burden of establishing a severe mental impairment through medical

evidence. *Yuckert*, 482 U.S. at 146; SSR 85-28, 1985 WL 56856, at *3.

The Commissioner also contends that a review of the record reveals that

there is no evidence establishing that plaintiff had a mental impairment. First,

Plaintiff does not list a mental impairment in her Disability Report – Adult,

though, she does report that she has eleven physical impairments (Tr. 255); and in

her Disability Report – Appeal she states that she has no new illnesses or

conditions. (Tr. 300). Plaintiff's medical records also demonstrate that on

numerous occasions her providers observed that she had no unusual anxiety or

evidence of depression. (Tr. 460, 464, 469, 548, 566, 577). Further, Plaintiff's

providers consistently observed that she was alert and oriented or alert and

oriented to three spheres (Tr. 365, 450, 460, 464, 469, 488, 548, 566, 577), and her

10

mood and affect were appropriate.  (Tr. 450).  In addition, Dr. Shaw concluded that plaintiff was alert and oriented to three spheres, her speech was normal, and she knew her date of birth and the current President.  (Tr. 600).  Moreover, there is no evidence that plaintiff ever sought any mental health treatment.  (Tr. 315-604).  Therefore, the Commissioner contends that, as plaintiff failed to identify any objective evidence that demonstrates that she has a medically determinable mental impairment, and the evidence in the record does not reveal a mental impairment, plaintiff failed to establish any error by the ALJ.

While plaintiff then contends that the Agency's regulations require the state agency to have a psychologist or psychiatrist review the file when there is evidence of the existence of a mental impairment, the Commissioner points out that the record does not contain any evidence of a mental impairment.  Further, while plaintiff testified at the hearing that she had mental health symptoms, the ALJ found that her subjective complaints were not entirely credible (Tr. 32), a finding that the Commissioner points out that plaintiff has not challenged in this appeal.

Plaintiff also claims that due to her testimony about her mental health symptoms, the Agency was required to refer her to a psychiatrist or a psychologist for a mental consultative examination.  A consultative examination may be obtained when the evidence as a whole, both medical and nonmedical, is not

11

sufficient to support a decision on an individual's claim.  20 C.F.R.

§ 416.919a(b)).  Here, the Agency determined that additional evidence regarding

plaintiff's physical impairments was required (Tr. 145), and plaintiff was referred

to a consultative examination with Dr. Shaw.  (Tr. 598-604).  However, given that

there was no evidence that established the presence of a mental impairment, the

Commissioner maintains that the Agency was not required to obtain a psychiatric

or psychological consultative examination.  *See Landsaw v. Sec'y of Health &*

*Human Servs*., 803 F.2d 211, 214 (6th Cir. 1986) ("[T]he regulations do not

require an ALJ to refer a claimant to a consultative specialist, but simply grant him

the authority to do so if the existing medical sources do not contain sufficient

evidence to make a determination.") (citing 20 C.F.R. § 416.917(a)).

While plaintiff asserts that in assessing a claimant's RFC, the ALJ has to

express her mental limitations in terms of work-related functions, the

Commissioner points out that in determining a claimant's RFC, the ALJ only

considers functional limitations from medically determinable impairments.  SSR

96-8p, 1996 WL 374184, at *1.  Here, plaintiff has presented no evidence that she

has a medically determinable mental impairment, nor has plaintiff identified any

work-related limitations that her alleged condition imposes.  Plaintiff points to

SSR 85-15, but the Commissioner says that Ruling merely sets forth the basic

mental demands of unskilled work, and in the present case, there is no evidence in

the record that plaintiff has a mental impairment or experiences any mental limitations. SSR 85-15, 1985 WL 56857, at *4. Moreover, while plaintiff cites *Farris v. Sec'y of Health and Human Servs.*, 773 F.2d 85, 89-90 (6th Cir. 1985), the Commissioner contends that decision merely discusses the severity standard; but again, plaintiff failed to present any medical evidence establishing the existence of a mental impairment, let alone a severe impairment.

Plaintiff additionally maintains that the ALJ ignored the hypothetical question to the vocational expert that included restrictions that she needed to take breaks and would miss three or more days of work a month due to illness. "A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments." *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001). An ALJ, however, is not required to incorporate unsubstantiated allegations into his hypothetical question. *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ . . . is required to incorporate only those limitations accepted as credible by the finder of fact."). Here, according to the Commissioner, there is no evidence that corroborates the limitations in the hypothetical question that plaintiff cited, and thus, the ALJ was

13

not required to adopt the vocational expert's response.

Plaintiff contends that the ALJ failed to discuss each work-related activity in determining her RFC. Pursuant to SSR 96-8p, an ALJ must do a function-by-function assessment of the seven strength demands, i.e., sitting, standing, walking, lifting, carrying, pushing, and pulling. SSR 96-8p, 1996 WL 374184, at *5. The Commissioner maintains that the ALJ complied with that requirement. First, in the RFC finding, the ALJ limited plaintiff to no pushing/pulling with her right upper extremity and no use of foot controls with her right lower extremity. (Tr. 23). The ALJ also determined that plaintiff could only lift and carry up to ten pounds occasionally, stand and walk for approximately two hours in an eight-hour day, and sit for approximately six hours in an eight-hour day. (Tr. 31). As such, the ALJ accounted for the seven strength demands in his decision. (Tr. 23, 31). Further, to the extent that plaintiff is alleging that the ALJ had to conduct a function-by-function assessment of her mental limitations, as discussed in Section A, the Commissioner again asserts that there is no evidence that plaintiff had a medically determinable or severe mental impairment, or that she experienced any mental restrictions.

Plaintiff also claims that the ALJ did not include a narrative discussion of how the evidence supported each of his conclusions. An RFC assessment must include a narrative discussion describing how the evidence supports each

14

conclusion with citations to specific medical facts and nonmedical evidence.  SSR 96-8p, 1996 WL 374184, at *7.  In the present case, the Commissioner contends that the ALJ complied with that requirement, as he discussed the objective and subjective evidence that he considered in formulating his RFC determination, and cited the evidence that supported his finding.  (Tr. 24-32).  Specifically, the ALJ evaluated the evidence regarding plaintiff's fibromyalgia (Tr. 24-25), discussed plaintiff's hearing testimony (Tr. 25-26) and the objective evidence in the record (Tr. 26-30), and went through the required analysis for SSRs 03-2p and 02-1p. (Tr. 30-31).  The ALJ also discussed the evidence that supported his findings regarding plaintiff's ability to lift, carry, push, pull, stand, walk, sit, operate foot controls, and engage in postural activities (Tr. 31), as well as the evidence that substantiated her environmental restrictions and his credibility finding.  (Tr. 32).

Plaintiff also asserts that because the ALJ rejected the opinion of the state agency physician and her treating physician, the ALJ "essentially made up an RFC."  Plaintiff goes on to state that the RFC finding is a medical assessment, and thus, the ALJ is not qualified to make such a determination and has to rely on assessments from treating and/or examining sources.  Contrary to plaintiff's argument, the Commissioner maintains that the RFC finding is an administrative determination of the most that a claimant can do despite her impairments.  20 C.F.R. §§ 416.927(d)(2), 416.945(a).  The ALJ is also charged with rendering the

RFC determination, and is not required to base it on any particular piece of evidence. 20 C.F.R. § 416.946(c); *Rudd v. Comm'r of Soc. Sec.*, 531 Fed. Appx. 719, 728 (6th Cir. 2013) (quoting SSR 96-5p) ("[T]o require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'"). Further, the ALJ was not playing doctor by determining plaintiff's RFC, but instead, discharging his duties, as required by the regulations. 20 C.F.R. § 416.946(c); *Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 439 (6th Cir. 2010) ("An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding.").

As for the ALJ rejecting the other medical opinions in the record, the Commissioner argues that the ALJ's RFC finding is consistent with Dr. Shaw's opinion that plaintiff could work eight hours a day, and was able to sit, stand, walk, bend minimally, and lift at least five pounds without difficulty. (Tr. 23-24, 600). The ALJ also found that plaintiff was more limited than the state agency medical consultant, as the ALJ limited plaintiff to a range of sedentary work while Dr. Flores restricted her to light work (Tr. 23-24, 150), but it is unclear how that

16

was harmful to Plaintiff. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)

("[T]he burden of showing that an error is harmful normally falls upon the party

attacking the agency's determination."). With respect to Dr. Popoff's opinion,

while the ALJ evaluated the doctor's opinion, and concluded that it was entitled to

limited weight because it was a check-list opinion, which was not substantiated by

his treatment notes; the ALJ gave greater weight to the doctor's treatment notes.

(Tr. 26). Moreover, plaintiff failed to challenge the ALJ's evaluation of Dr.

Popoff's opinion, or demonstrate that the doctor's opinion was supported by the

evidence in the record.

Plaintiff further maintains that the ALJ's step-three and RFC findings are

contradicted by her hearing testimony and the evidence presented at the hearing.

The only evidence that plaintiff cites in support of her argument, however, is her

hearing testimony and the ALJ found that her subjective complaints were not

credible (Tr. 32), a finding that she has not challenged. Moreover, "[s]ubjective

claims of disabling pain must be supported by objective medical evidence in order

to serve as the basis of a finding of disability," and here, no objective evidence has

been presented that supports plaintiff's alleged limitations. *McCoy on behalf of*

*McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995). Plaintiff adds that when

presented with hypotheticals based on the limitations described in her hearing

testimony the vocational expert testified that there were no jobs available. An

ALJ, however, is not required to incorporate unsubstantiated allegations into his hypothetical question. *Stanley*, 39 F.3d at 118; *Casey*, 987 F.2d at 1235. Here, the Commissioner maintains that there is no evidence that corroborates the limitations in the hypotheticals that plaintiff referenced and thus, the ALJ was not required to adopt the vocational expert's response.

## III.   DISCUSSION

### A.   <u>Standard of Review</u>

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant."  *Rogers v.*

*Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence.").  "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec.

19

Rul. 96-7p, 1996 WL 374186, *4.

     If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

     The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of

20

whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc.
Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that
either the ALJ or the reviewing court must discuss every piece of evidence in the
administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508
(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly
addressing in his written decision every piece of evidence submitted by a party.")
(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,
198 Fed.Appx. 521, 526 (6th Cir. 2006).

    B.    <u>Governing Law</u>

    The "[c]laimant bears the burden of proving his entitlement to benefits."
*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);
*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).
There are several benefits programs under the Act, including the Disability
Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the
Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et
seq*.).  Title II benefits are available to qualifying wage earners who become
disabled prior to the expiration of their insured status; Title XVI benefits are
available to poverty stricken adults and children who become disabled.  F. Bloch,
Federal Disability Law and Practice § 1.1 (1984).  While the two programs have
different eligibility requirements, "DIB and SSI are available only for those who

21

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion.

23

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.   <u>Analysis and Conclusions</u>

1.   Mental Impairment

At step two of the sequential evaluation the claimant bears the burden of showing a severe impairment. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). In order to meet this burden, the claimant must demonstrate a medically determinable impairment that significantly limits her physical or mental ability to do basic work activities. *Kilgore v. Colvin*, 2014 WL 5594984, at *3 (E.D. Ky. 2014), citing 20 C.F.R. §§ 404, 1508, 404.1521.  Plaintiff has the burden of proof to show not only that she has a medically-determinable impairment, but that it is so severe that it prevents her from engaging in her past relevant work or any other substantial gainful activity that exists in the national economy. *Cade v. Colvin*, 2014 WL 5518149, at *6 (N.D. Ohio 2014).  At step two, an ALJ must first evaluate the claimant's "symptoms, signs, and laboratory findings" to determine whether the claimant has a "medically determinable mental impairment(s)." *Fiore v. Soc. Sec. Comm'r*, 2013 WL 6410375 (S.D. Ohio 2013), quoting *Rabbers v.Soc. Sec. Comm'r*, 582 F.3d 647, 652-53 (6th Cir. 2009).  The burden of establishing the medically determinable impairment rests squarely on a claimant, given that the Act provides that "[a]n individual shall not be considered to be under a disability

24

unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require." *Bowen*, 482 U.S. at 146.

Plaintiff points to no medical evidence in this record to support her claim that she suffers from a medically determinable mental impairment. This case is quite similar to the circumstances presented in *Kavalousky v. Colvin*, 2013 WL 1910433 (N.D. Ohio 2013). In *Kavalousky*, the ALJ did not consider the plaintiff's alleged anxiety at any step of the sequential analysis. The court affirmed the ALJ's analysis because the plaintiff failed to carry his burden that his anxiety was a medical determinable impairment. No physician had diagnosed plaintiff with anxiety and he had never sought any treatment with a psychologist or psychiatrist. Other than a prescription for Xanax, the record was devoid of any other medical evidence to support the claimed anxiety. In addition, the plaintiff had not alleged anxiety as a basis for disability. Thus, the court concluded that plaintiff could not credibly claim that anxiety was a medically determinable impairment. *Id*. at *7. In this case, plaintiff points to no medical records to support her claim of a mental impairment, offers no diagnosis by an acceptable medical source, and did not claim that she was disabled because of any mental impairment.

Plaintiff argues that the ALJ should have had her examined by a mental health professional based on her testimony at the hearing that she had anxiety and

25

depression.  However, the undersigned does not find this testimony to be a compelling reason for the ALJ to have ordered a psychological or psychiatric examination of plaintiff.  While the ALJ does bear some obligation to develop the record, in this case, plaintiff was regularly seeing a multitude of health care practitioners and was represented by counsel at the hearing.  *Staten v. Astrue*, 2011 WL 6950930, *8 (S.D. Ohio 2011).  As the Commissioner points out, plaintiff's medical records evidence a stated *lack* of any unusual depression or anxiety.  Plaintiff's testimony does not obviate her own obligation to establish that she had a medically determinable impairment.  Under these circumstances, the undersigned finds no error in the ALJ's decision.

> 2.    RFC/Narrative

The undersigned is not persuaded that the ALJ failed to observe the requirements of SSR 96-8p, which requires that the RFC assessment to "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," discuss "why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence,"

"consider and address medical source opinions," and "[i]f the RFC assessment

conflicts with an opinion from a medical source, ... explain why the opinion was

not adopted." *Id*. Social Security Ruling (SSR) 96-8p defines RFC as:

> an assessment of an individual's ability to do sustained
> work-related physical and mental activities in a work
> setting on a regular and continuing basis. A 'regular and
> continuing basis' means 8 hours a day, for 5 days a
> week, or an equivalent work schedule. SSR 96-8p, 1996
> LEXIS 5. When assessing the RFC, the adjudicator must
> discuss the individual's ability to perform sustained work
> activities in an ordinary work setting on a regular and
> continuing basis (i.e., 8 hours a day, 5 days a week, or an
> equivalent schedule), and describe the maximum amount
> of each work-related activity the individual can perform
> on the evidence available in the record.

*Kane v. Astrue*, 2011 WL 3353866 (N.D. Ohio 2011). Where, as here, the ALJ

provided a narrative discussion of a claimant's symptoms, their effect on the

claimant's work, and how he reached those conclusions, the ALJ's narrative

substantially complied with the requirements of SSR 96-8p. *Waters v. Astrue*,

2011 WL 3847421, *6 (E.D. Ky. 2011). In this case, the undersigned finds no

failure in the ALJ's narrative or formulation of the RFC such that any remand is

necessary or appropriate.

### 3.    Hypothetical Questions

Plaintiff complains that the ALJ failed to adopt the limitations posed in

certain hypothetical questions to the vocational expert. However, the ALJ did not

find these limitations credible and is not required to adopt limitations that are not found to be credible.  Notably, as the Commissioner points out, plaintiff did not challenge the ALJ's credibility determination.  In the view of the undersigned, the ALJ's RFC is well-supported by substantial evidence and that plaintiff's credible limitations were accommodated in both the RFC and the hypothetical question posed to the vocational expert.  The ALJ's credibility analysis was thorough, followed applicable law, and he specifically relied on substantial evidence in the record to support each of his conclusions.  Plaintiff's argument that the ALJ erred by not adopting her testimony wholesale is neither well-developed nor supported by the record evidence.   Plaintiff fails to explain how the ALJ's RFC does not accommodate her credible limitations, as found by the ALJ, which are fully supported by substantial evidence in the record.

4.    Medical Expert Opinions

Plaintiff first finds fault with the ALJ's failure to adopt the limitations set forth in the 2011 consulting examiner report.  However, the ALJ's RFC is *more* restrictive than that set forth in this opinion.  Thus, the undersigned fails to see how this could be reversible error.

Next, plaintiff claims the ALJ erred by not adopting Dr. Popoff's conclusions.  However, Dr. Popoff's treating records and opinion long pre-dated the time period at issue in this case.  Indeed, his opinions and records all predate

28

the *prior* administrative decision in which plaintiff's claim was rejected. Moreover, the ALJ explained in detail why Dr. Popoff's opinions were not supported by his own treatment records and the medical evidence as a whole. Thus, the undersigned finds no basis to disturb the ALJ's treatment of Dr. Popoff's opinions.

Moreover, the ALJ's RFC finding is consistent with Dr. Shaw's opinion that plaintiff could work eight hours a day, and was able to sit, stand, walk, bend minimally, and lift at least five pounds without difficulty. (Tr. 23-24, 600). Thus, the undersigned concludes that the ALJ did not "make up" the RFC without utilizing any medical opinions, as alleged by plaintiff

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

29

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 14, 2015     s/Michael Hluchaniuk
             Michael Hluchaniuk
             United States Magistrate Judge

30

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 14, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

s/Tammy Hallwood_____

Case Manager

(810) 341-7850

tammy_hallwood@mied.uscourts.gov

31